# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 12-630V
**Filed: May 31, 2016**

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * | PUBLISHED |
| LAURA DAY and TODD DAY, *as* * | |
| *Guardians of the person and estate of* * | Case No. 12-630 V |
| B.K.D., * | |
| * | |
|     Petitioners, * | Chief Special Master Dorsey |
| * | |
| v. * | Gardasil ("HPV"); FluMist |
| * | ("influenza"); Interim Damages; |
| SECRETARY OF HEALTH * | Past Pain and Suffering. |
| AND HUMAN SERVICES, * | |
| * | |
|     Respondent. * | |
| * * * * * * * * * * * * * * * * * * * * * * * * | |

Anne Carrion Toale, Maglio, Christopher & Toale, Sarasota, FL, for petitioner.
Gordon Elliot Shemin, U.S. Department of Justice, Washington, DC, for respondent.

### DECISION AWARDING INTERIM DAMAGES[1]

On September 24, 2012, Laura Day and Todd Day ("petitioners") filed a petition for compensation under the National Vaccine Injury Compensation Program[2] ("the Program"), as the legal representatives of their daughter, B.K.D., in which they alleged that the Gardasil ("HPV") and FluMist ("influenza") vaccinations B.K.D. received on September 28, 2011, caused her to develop multiple sclerosis ("MS"). Petition at ¶¶ 8-9. Petitioners further alleged that the vaccinations "actually caused, or alternatively, significantly aggravated" B.K.D.'s injuries." Id.

---

[1] Because this decision contains a reasoned explanation for the undersigned's action in this case, the undersigned intends to post this ruling on the website of the United States Court of Federal Claims, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 note (2012)(Federal Management and Promotion of Electronic Government Services). As provided by Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b).

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10 to -34 (2012). All citations in this order to individual sections of the Vaccine Act are to 42 U.S.C. § 300aa.

1

at ¶ 11.  After the filing of the petition, it was discovered that B.K.D. actually suffers from a rare autoimmune disorder known as neuromyelitis optica ("NMO"), or Devic's Syndrome, rather than MS.  See Petitioners' ("Pet'rs'") Exhibit ("Ex.") 6 at 13.  On November 13, 2015, the undersigned issued a ruling on entitlement finding that petitioners were entitled to compensation.  Ruling on Entitlement dated November 13, 2015 (ECF No. 82).  A damages order was entered on the same day.

## I. Procedural History of Petitioners' Motion

On January 7, 2016, petitioners filed a Motion for Ruling on Entitlement to Interim Damages, outlining the extreme financial hardships that B.K.D.'s family currently faces.  Motion for Ruling on Entitlement to Interim Damages ("Pet'rs' Motion") dated January 7, 2016 (ECF No. 88).  Petitioners stated that B.K.D. has an urgent need for a wheelchair van and ADA-compliant housing.  Id. at 1-2.  Petitioners further stated that the life care planning process has just begun and could take more than one year to resolve.  Id. at 1.  Petitioners urged that the parties were likely to agree on the appropriate amounts of pain and suffering and lost earning capacity.  Id. at 2.  Petitioners also disclaimed any intention to reject any future awards of damages.  Id.

Respondent filed her response on January 22, 2016, opposing an award of interim damages and arguing that the Vaccine Act does not authorize special masters to issue more than one decision on damages.  Respondent's Response ("Resp's Resp.") dated January 22, 2016 (ECF No. 89).

A status conference was held on January 28, 2016, during which the parties discussed petitioners' motion for interim damages.  The undersigned noted respondent's continued objection to an award of interim damages and stated that respondent was not waiving her objection by conferring with petitioners' counsel to reach an agreement on an appropriate amount of damages.  See Scheduling Order dated January 28, 2016 (ECF No. 93).  On February 29, 2016, the parties filed status reports in which they agreed that the amount of lost wages is $931,359.63.  See Status Reports dated February 29, 2016 (ECF Nos. 98-99).  Petitioners also argued that the Court should award $250,000.00 for pain and suffering, as B.K.D. suffers from a debilitating autoimmune disorder, but respondent declined to take a position on the appropriate amount of pain and suffering at that time.  See id.[3]

---

[3] On April 13, 2016, the undersigned issued a scheduling order asking the parties to provide information on whether they could agree to an amount of past unreimbursed expenses.  Scheduling order dated April 13, 2016 (ECF No. 104).  Petitioners reported that the parties had not yet begun discussing the appropriate amounts to be paid for past unreimbursed expenses.  Pet'rs' Status Report dated April 14, 2016 (ECF No. 105).  In a status report filed on April 21, 2016, petitioners stated that they provided their attorney with some receipts for past medical expenses as well as travel and mileage expenses, but the amount of unreimbursed expenses has not been finalized.  Pet'rs' Status Report dated April 21, 2016 (ECF No. 106).

at ¶ 11.  After the filing of the petition, it was discovered that B.K.D. actually suffers from a rare autoimmune disorder known as neuromyelitis optica ("NMO"), or Devic's Syndrome, rather than MS.  See Petitioners' ("Pet'rs'") Exhibit ("Ex.") 6 at 13.  On November 13, 2015, the undersigned issued a ruling on entitlement finding that petitioners were entitled to compensation.  Ruling on Entitlement dated November 13, 2015 (ECF No. 82).  A damages order was entered on the same day.

## I. Procedural History of Petitioners' Motion

On January 7, 2016, petitioners filed a Motion for Ruling on Entitlement to Interim Damages, outlining the extreme financial hardships that B.K.D.'s family currently faces.  Motion for Ruling on Entitlement to Interim Damages ("Pet'rs' Motion") dated January 7, 2016 (ECF No. 88).  Petitioners stated that B.K.D. has an urgent need for a wheelchair van and ADA-compliant housing.  Id. at 1-2.  Petitioners further stated that the life care planning process has just begun and could take more than one year to resolve.  Id. at 1.  Petitioners urged that the parties were likely to agree on the appropriate amounts of pain and suffering and lost earning capacity.  Id. at 2.  Petitioners also disclaimed any intention to reject any future awards of damages.  Id.

Respondent filed her response on January 22, 2016, opposing an award of interim damages and arguing that the Vaccine Act does not authorize special masters to issue more than one decision on damages.  Respondent's Response ("Resp's Resp.") dated January 22, 2016 (ECF No. 89).

A status conference was held on January 28, 2016, during which the parties discussed petitioners' motion for interim damages.  The undersigned noted respondent's continued objection to an award of interim damages and stated that respondent was not waiving her objection by conferring with petitioners' counsel to reach an agreement on an appropriate amount of damages.  See Scheduling Order dated January 28, 2016 (ECF No. 93).  On February 29, 2016, the parties filed status reports in which they agreed that the amount of lost wages is $931,359.63.  See Status Reports dated February 29, 2016 (ECF Nos. 98-99).  Petitioners also argued that the Court should award $250,000.00 for pain and suffering, as B.K.D. suffers from a debilitating autoimmune disorder, but respondent declined to take a position on the appropriate amount of pain and suffering at that time.  See id.[3]

---

[3] On April 13, 2016, the undersigned issued a scheduling order asking the parties to provide information on whether they could agree to an amount of past unreimbursed expenses.  Scheduling order dated April 13, 2016 (ECF No. 104).  Petitioners reported that the parties had not yet begun discussing the appropriate amounts to be paid for past unreimbursed expenses.  Pet'rs' Status Report dated April 14, 2016 (ECF No. 105).  In a status report filed on April 21, 2016, petitioners stated that they provided their attorney with some receipts for past medical expenses as well as travel and mileage expenses, but the amount of unreimbursed expenses has not been finalized.  Pet'rs' Status Report dated April 21, 2016 (ECF No. 106).

## II. Statement of the Issues

The first issue presented in petitioners' motion is whether the statute permits an award of interim damages. Assuming that the statute allows a special master to award interim damages, the second issue is whether this case presents an appropriate circumstance for such an award. The third issue is what type(s) of damages petitioners may receive on an interim basis. The undersigned discusses each of these issues in turn.

## III. Summary of Petitioners' Arguments

Petitioners assert three main arguments in support of their motion for interim damages. First, petitioners argue that the plain meaning of the Vaccine Act supports multiple awards of damages. Petitioners next argue that multiple damages awards comport with the overall purpose of the Vaccine Act. Finally, petitioners argue that the Federal Circuit has previously allowed awards of interim damages in extreme circumstances.

### a. Plain Meaning of the Vaccine Act Supports Awarding Interim Damages

The Vaccine Act authorizes special masters to determine whether petitioners are entitled to compensation and the amount of such compensation. The Act reads, in relevant part, "A special master to whom a petition has been assigned shall issue a decision on such petition with respect to whether compensation is to be provided under the Program and the amount of such compensation." § 300aa-12(d)(3). Petitioners argue that where the Vaccine Act refers to "a" decision, the Congressional rules of statutory construction allow the word "a" to be interpreted as "several." Pet'rs' Proposed Order at 4. The Congressional rules provide that "in determining the meaning of any Act of Congress, unless the context indicates otherwise – words importing the singular include and apply to several persons, parties, or things." See id. at 4 (quoting 1 U.S.C. § 1). Petitioners thus argue that the language of the Vaccine Act does not prohibit special masters from issuing multiple awards of damages.

### b. Overall Purpose of the Vaccine Act Supports Awarding Interim Damages

Petitioners next argue that an award of interim damages comports with the overall purpose of the Vaccine Act. Petitioners urge that a statute should be construed consistent with its Congressional intent. Pet'rs' Proposed Order at 5 (citing Saunders v. Sec'y of Health & Human Servs., 25 F.3d 1031, 1036 (Fed Cir. 1994); Doyon, Ltd. v. United States, 214 F.3d 1309, 1314 (Fed. Cir. 2010); see also Cloer v. Sec'y of Health & Human Servs., 675 F.3d 1358, 1362 (Fed. Cir. 2012) (noting the Vaccine Act should be constructed in a manner that effectuates its underlying spirit and purpose)). Petitioners emphasize that Congress' intent in passing the Vaccine Act was to compensate vaccine-injured individuals "quickly, easily, and with certainty and generosity." Id. (citing H.R. Rep. 99-908 (1986)). Petitioners argue that interpreting the Act so as to permit multiple awards of interim damages gives effect to this Congressional intent. Id.

### c. Previous Federal Circuit Rulings Support Awarding Interim Damages

Petitioners next highlight several Federal Circuit rulings which have permitted multiple damages awards in Program cases, arguing that these cases support an award of interim damages in B.K.D.'s case.  Petitioners argue that Avera, which allowed multiple awards of attorneys' fees and costs, supports multiple damages awards, because awarding fees and costs is procedurally similar to awarding damages.  Pet'rs' Proposed Order at 6 (discussing Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343 (Fed. Cir. 2008).  Petitioners further argue that the Federal Circuit authorized multiple elections to accept damages in both Heinzelman and Tembenis.  Id. (citing Heinzelman v. Sec'y of Health and Human Servs., 681 F.3d 1374 (Fed. Cir. 2012) (granting petitioner's motion for interim damages)); Tembenis v. Sec'y of Health and Human Servs., 733 F.3d 1190 (Fed. Cir. 2013) (awarding an uncontested amount of interim damages)).

### IV.   Summary of Respondent's Arguments

Respondent argues that an award of interim damages is improper for three main reasons.  First, respondent contends that the language of the Vaccine Act does not permit special masters to award interim damages.  Resp's Resp. at 1.  Respondent next argues that interim fee awards, though permitted by the Federal Circuit in Avera, are procedurally different from interim damages awards, because petitioners are not required to file an election to accept judgment for awards of interim fees.  Id. at 2.  Finally, respondent argues that Heinzelman and Tembenis are non-precedential and procedurally different, and thus they do not constitute the Federal Circuit's "approval" of interim damages.  Id. at 3-4.

### a. Language of the Vaccine Act Does Not Permit Interim Awards

Respondent first argues that the language of the Vaccine Act only contemplates a single judgment and does not allow flexibility for multiple damages decisions.  Resp's Resp. at 2.  The Secretary argues, "Indeed, a single damages decision leads to a single judgment, and a single election, a proposition that makes perfect sense given that the Act requires a special master to informally adjudicate the petition within 240 days … and [the Program] is designed to work faster … than the civil tort system."  Id. (citing 42 U.S.C. §300aa-12(d)(3); Shalala v. Whitecotton, 514 U.S. 268, 269 (1995) (citing H.R. Rep. No.99-908, at 3-7)).  Respondent also observes that the Office of Special Masters is a "creature of statute" and is thus required to interpret the Vaccine Act according to the will of Congress and at the direction of the Federal Circuit.  Resp's Resp. at 2 (quoting Patton v. Sec'y of Health & Human Servs., 25 F.3d 1021, 1027 (Fed Cir. 1994).

### b. Procedural Differences Between Interim Fee and Interim Damages Awards Make Interim Damages Inappropriate

Respondent contends that contrary to the special master's reasoning in Lerwick v. Sec'y of Health & Human Servs., No. 06-847V, 2014 WL 1897656 (Fed. Cl. Spec. Mstr. April 16, 2014) (awarding interim damages), interim fee awards are procedurally distinguished from interim damages awards because petitioners are not required to file an election to accept the judgment of an award of interim attorneys' fees.  Resp's Resp. at 2, 4.  The Secretary points to

4

an earlier order from the Federal Circuit for the proposition that "[a]ttorneys' fees, and the judgments allowing them, are wholly separate matters from the compensation payable to vaccine-injured individuals for their vaccine-related injury." Resp.'s Resp. at 2-3; (citing Saunders v. Sec'y of Health & Human Servs., 25 F.3d 1031, 1034-35 (Fed. Cir. 1994) (internal quotations omitted)).

### c. Procedural Differences in Federal Circuit Decisions Make Awarding Interim Damages Inappropriate

Finally, respondent argues that neither Heinzelman nor Tembenis constitutes the Federal Circuit's approval of interim damages awards, as they were non-precedential orders decided under different procedural circumstances. Resp's Resp. at 3. The Secretary urges that neither order states that special masters have the power to issue interim damages awards and that both cases in which the Federal Circuit allowed petitioners to receive interim damages were on appeal after all damages proceedings had been concluded. Id. Respondent further argues that "the underlying premise … in Tembenis and Heinzelman – that an election as to one judgment binds the petitioner to accept all subsequent judgments – is subject to question." Id. at 4. The Secretary contends that the Federal Circuit has not provided persuasive case law to support this holding. She states, "[T]here is nothing in the Vaccine Act itself that requires a petitioner who elects to accept a judgment awarding interim damages to accept any subsequent judgment." Id. at 5. The Secretary thus reasons that "a petitioner who accepts one judgment is not clearly bound to accept a separate judgment." Id.

## V. Analysis

### a. The Statute Permits an Award of Interim Damages

In Lerwick, the special master awarded interim damages to petitioner for past pain and suffering and past unreimbursed medical expenses. 2014 WL 1897656, at *11. Despite the Secretary's argument that "a" decision should be interpreted to mean "one" decision, the special master found that the rules of statutory construction permit interpretive flexibility. Id. at *3.[4] The undersigned agrees with this analysis and finds that the plain language of the Vaccine Act does not prohibit special masters from issuing multiple decisions on compensation. The undersigned further notes that this interpretation of the statute comports with the overall intent of Congress,[5] who instructed that the purpose of the Vaccine Act is to compensate vaccine-injured individuals "quickly, easily, and with certainty and generosity." H.R. Rep. 99-908, at 3 (1986).

---

[4] The special master explained, "In a statute, the use of an indefinite article ("a" or "an") can mean "one or more." In contrast, the use of the definite article ("the") usually suggests a single item . . . . The Federal Circuit has used the same guidelines in construing patents." Lerwick, 2014 WL 1897656, at 3 (citing Colorado v. Sunoco, Inc., 337 F.3d 1233, 1241 (10th Cir. 2003) (interpreting the Comprehensive Environmental Response, Compensation and Liability Act)); Boeing Co. v. United States, 75 Fed. Cl. 34, 43 (2007) ("If more than one such official were contemplated, the indefinite articles 'an' or 'a' should have been used.")).

[5] It is well established that principles of statutory construction require a statute to be interpreted in a way consistent with Congress' intent. See Saunders, 25 F.3d at 1036; Doyon, 214 F.3d 1309

The question of whether the Vaccine Act authorizes multiple decisions on compensation has also been addressed by the Federal Circuit.  In <u>Avera</u>, the Federal Circuit stated that special masters have the authority to issue multiple decisions awarding attorneys' fees and costs.  515 F.3d at 1352.  Moreover, the Federal Circuit rejected the Secretary's arguments against interim damages in both <u>Heinzelman</u> and <u>Tembenis.</u>

In <u>Heinzelman</u>, the Federal Circuit granted petitioner's motion for interim damages and ordered the Court of Federal Claims to issue an interim damages award to petitioner.  <u>Heinzelman</u>, Order dated August 6, 2012 at 2.  In <u>Tembenis</u>, the Federal Circuit rejected respondent's concerns that interim damages would compromise the structure of the Program by causing inconsistent elections and thus result in claims outside of the Program.  <u>Tembenis</u>, Order dated May 16, 2013 at 5-6.  With regard to the Secretary's arguments about the potential for inconsistent elections of judgments, the Federal Circuit found that a judicial officer could hold that the election to accept a judgment awarding interim compensation implied the acceptance of a later judgment awarding final compensation, thus preventing the problem of inconsistent elections.  <u>Id.</u> at 5-6; <u>accord</u> <u>Lerwick</u>, 2014 WL 1897656, at *7.

While the undersigned is not bound by these non-precedential Federal Circuit rulings, she finds their reasoning to be sound, in accordance with the Act, and therefore highly persuasive.  For these reasons, the undersigned finds that special masters possess the legal authority to award compensation on an interim basis.

### b.  An Award of Interim Damages is Appropriate in This Case

Now that the undersigned has determined that special masters possess the discretionary authority to award interim damages, she must determine whether interim damages are appropriate under the facts and circumstances of this case.  Petitioners suggest four factors to consider in determining whether interim damages are appropriate, including: "(1) the length of time since the vaccine injury; (2) the length of time … since the ruling on entitlement; (3) the general nature and extent of expenses related to the vaccine injury …., and (4) the agreement of the parties as to undisputed damages."  Pet'rs' Proposed Order at 9.

The basis for an award of interim damages is the November 13, 2015 Ruling, which found that petitioners had established that the Gardasil and FluMist vaccinations that B.K.D. received on September 28, 2011, caused her to develop NMO.  Ruling on Entitlement at 31.  As a result of these vaccinations, she suffers from a rare and debilitating autoimmune disorder known as NMO.  It has been almost five years since the onset of B.K.D.'s injury.

The parties are in the process of developing a life care plan for B.K.D., which will provide guidance as to the appropriate amount of damages.  Petitioners' life care planner recently advised that B.K.D. will need to be evaluated by at least three new specialists, in addition to her

---

("The objective when interpreting statutes is to give effect to the intent of Congress . . . . To fully understand the meaning of a statute, we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy.").

current team of doctors, in order to create an accurate life care plan.[6]  See Pet'rs' Reply dated March 22, 2016 (ECF No. 101).  In addition, because B.K.D. now receives Medicaid, there is a Medicaid lien, which will require additional time to process.  See Pet'rs' Status Report dated April 14, 2016 (ECF No. 105).[7]  The final resolution of B.K.D.'s damages could take several more months.

While her damages award remains pending, B.K.D. has an immediate need for wheelchair-accessible transportation.[8]  Pet'rs' Motion at 2.  Due to extreme family and financial hardships,[9] petitioners are unable to make this purchase.  Id. at 1-2.  An interim damages award will assist her in making this purchase.  This decision does not contemplate that interim damages would be routinely or even frequently awarded, but in this case, petitioners have made a persuasive case that there is extreme hardship and that accordingly, the purpose of the Vaccine Act is better fulfilled by making the interim award.  For all of the reasons above, the undersigned finds that an award of interim damages is appropriate in this case.

### c. Petitioners May Receive Interim Damages for Past Pain and Suffering

Petitioners have proposed an award of $931,359.63 for lost earnings and $250,000.00 for past pain and suffering.  Pet'rs' Reply at 2-3.  While the parties agree that the present value of B.K.D.'s earning capacity is $931,359.63, respondent has declined to take a position on the appropriate amount to be awarded for pain and suffering.  Pet'rs' Status Report dated February 29, 2016 (ECF No. 98); Resp.'s Status Report dated February 29, 2016 (ECF No. 99).  The

---

[6] Petitioners' most recent status report stated that B.K.D. has appointments with a urologist on June 14, 2016, a plastic surgeon on May 25, 2016, and a physical medicine and rehabilitation physician on November 14, 2016.  She is on a waiting list to see the physical medicine specialist should an appointment become available sooner.  Pet'rs' Status Report dated May 23, 2016 (ECF No. 110).

[7] In a status report dated April 21, 2016, petitioners reported that their attorney had received the Medicaid lien but was awaiting further information.  Pet'rs' Status Report dated April 21, 2016.  In their most recent status report, petitioners stated that the Medicaid lien amount is $7,584.74, but that this amount only encompasses one date of service.  Petitioner stated that billing records reflecting other Medicaid payments were being discussed with the Medicaid agency but will take time to collect.

[8] Petitioners report that "[B.K.D.] is [almost 18] years old and is quite heavy due to the steroid-induced weight gain, and [she] has outgrown her mother's ability to help lift her into the family car. A wheelchair van is urgently needed."  Pet'rs' Motion at 2.

[9] Unfortunate family and financial circumstances have prompted petitioners to request an award of interim damages.  Petitioners report that they are currently going through a divorce and will likely be declaring bankruptcy and surrendering the family home.  Pet'rs' Motion at 1.  Moreover, the home flooded and the family is currently living in a hotel.  Id.  And while Ms. Day is currently employed as a waitress, she will soon bear the primary residential responsibility for her four children, including B.K.D.  Id.

undersigned declines to award interim damages for B.K.D.'s future lost earnings but finds that B.K.D is entitled to receive $250,000.00 for past pain and suffering.[10]

B.K.D.'s injury is devastating and has been associated with multiple relapses. Hearing Transcript ("Tr") at 17-18. In late 2011, when she first became ill, B.K.D. presented to the emergency room on numerous occasions with weight loss, fever, irregular pupils, and leg weakness and numbness. Pet'rs' Ex. 2 at 186; Pet'rs' Ex. 4 at 14, 91-92. She began taking both intravenous and oral steroids, which caused her to gain weight. When she stopped taking oral steroids in December 2011, her NMO symptoms returned, and she again experienced unsteady gait, right leg weakness, back pain, and pupil irregularity. Pet'rs' Ex. 11 at 36. B.K.D. has had a number of relapses of NMO since late 2011, each associated with weakness, numbness, and tingling in her legs, back pain, and blurred vision. See, e.g., Pet'rs' Ex. 9 at 11-12; Pet'rs' Ex. 6 at 11; Pet'rs' Ex. 35 at 5-6; Pet'rs' Ex. 36 at 6. At the hearing on entitlement, there was testimony that she was hospitalized ten times in 2014 alone. Tr. 21-22.

B.K.D. takes a variety of medications and has ongoing and extensive rehabilitation. During the hearing, B.K.D. testified that the medications leave her tired, weak, and sometimes sick. Tr. 41. The steroids alone have caused her to gain over one hundred pounds. While the NMO is better managed with medications, B.K.D. can relapse at any time.

Due to the relapsing nature of her injury, B.K.D. has had to relearn to walk five times and has relied on medical equipment for walking, including a cane, a walker, leg braces, and a gait belt. When unable to walk, she relies on a wheelchair for transportation. Tr. 15; 43-44. Her illness has made it difficult for her to have a normal life. B.K.D. takes classes online rather than attending school, and she had her sixteenth birthday party at Riley Hospital. Tr. 42, 45. B.K.D. is also unable to play softball, her favorite sport and one of her life long passions. Tr. 9. Her mother testified during the hearing that despite the uncertain future of her daughter's health, B.K.D. has tried to make the most of her situation and enjoy life. Tr. 23, 25.

After reviewing B.K.D.'s testimony, the medical records, and all of the medical treatment and therapy she has undergone since 2011, the undersigned finds that B.K.D. is entitled to receive $250,000.00 to compensate her for past pain and suffering.

## VI.   Conclusion

The undersigned finds that petitioners are entitled to an award of interim damages under the unique facts and circumstances of this case. An award of B.K.D.'s past pain and suffering is appropriate in this case, and there is no reason to delay the entry of judgment on this item of damages, especially given petitioners' particularly difficult financial circumstances. The undersigned reserves ruling on the remaining statutory elements of damages for a future date.

---

[10] The undersigned declines to award interim damages for B.K.D.'s lost earning capacity. The death of a vaccinee prior to the issuance of a final judgment could affect the amount of compensation to which one is entitled. See Tembenis, 733 F.3d at 1195; Lerwick, 2014 WL 1897656, at *11. Therefore, the undersigned will not grant her an award of interim damages for lost earning capacity.

**Accordingly, the undersigned awards a total of $250,000.00, issued in the form of a check made payable to petitioner, Laura Day, as Guardian of the Person and Estate of B.K.D.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of court **SHALL ENTER JUDGMENT** in accordance herewith.[11]

**IT IS SO ORDERED.**

/s/ Nora Beth Dorsey
Nora Beth Dorsey
Chief Special Master

---

[11] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of notice renouncing the right to seek review.